# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

AIX SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

v.

BIG LIMO, INC., *et al.*,

    Defendants.

Case No. 3:21-cv-08

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART AIX SPECIALTY INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. #17); SUSTAINING IN PART AND OVERRULING IN PART JESSICA HINTON AND EVA PEPAJ'S CROSS MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. #19); JUDGMENT TO ENTER IN FAVOR OF PLAINTIFF AS TO CLAIMS BROUGHT BY JESSICA HINTON IN UNDERLYING LAWSUIT; JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AS TO CLAIMS BROUGHT BY EVA PEPAJ IN UNDERLYING LAWSUIT; TERMINATION ENTRY

---

Professional models Jessica Hinton and Eva Pepaj filed suit against Big Limo, Inc., alleging that Big Limo misappropriated their images in Facebook advertisements for its nightclub, "Pinups and Pints." *See Hinton v. Big Limo, Inc.*, Case No. 3:19-cv-300, which is also pending before the undersigned judge (hereafter "the Underlying Lawsuit").

Big Limo is insured through AIX Specialty Insurance Company ("AIX"). In the above-captioned action, AIX has filed suit against Big Limo, Jessica Hinton and Eva Pepaj, seeking a declaratory judgment concerning AIX's duty to defend and

indemnify Big Limo in the Underlying Lawsuit. This matter is currently before the Court on Cross Motions for Judgment on the Pleadings filed by AIX, Doc. #17, and by Jessica Hinton and Eva Pepaj, Doc. #19. Big Limo has joined the motion filed by Hinton and Pepaj. Doc. #20.

I.  **Background and Procedural History**

It is undisputed that Big Limo made unauthorized use of images of Jessica Hinton and Eva Pepaj in advertisements posted on the Facebook page for Pinups and Pints. Big Limo published Hinton's image on four occasions in August and September of 2016. It published Pepaj's image on April 23, 2018. Doc. #1-1, PageID##29-32, 35.

In the Underlying Lawsuit, Hinton and Pepaj sued Big Limo, asserting claims of invasion of privacy by appropriation, violations of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.02(A)(2) and (3), and a violation of the Lanham Act, 15 U.S.C. § 1125(a)(1). Therein, Hinton and Pepaj seek compensatory and punitive damages, along with injunctive relief. They maintain that Big Limo used their images "without authority in order to, *inter alia*, create the perception that Plaintiffs worked at, endorsed, or were otherwise affiliated with" Big Limo and Pinups and Pints. Doc. #1-1, PageID#21. On June 2, 2021, the parties notified the Court that they have settled all claims brought by Jessica Hinton in the Underlying Lawsuit. *See* Doc. #23 in the Underlying Lawsuit. All claims brought by Eva Pepaj against Big Limo are set for trial on November 8, 2021.

On January 6, 2021, AIX Specialty Insurance Company filed the above-captioned declaratory judgment action against Big Limo, Hinton and Pepaj. Doc. #1. AIX issued two commercial policies to Big Limo. One was effective for the period from April 28, 2017, to April 28, 2018. Doc. #1-2. The other was effective from April 28, 2018, to April 28, 2019. Doc. #1-3. AIX seeks a declaratory judgment on the question of whether it is obligated, under the terms of one or both of these policies, to defend and indemnify Big Limo in the Underlying Lawsuit. AIX has filed a Motion for Judgment on the Pleadings. Doc. #17. Hinton and Pepaj have filed a Cross Motion for Judgment on the Pleadings. Doc. #19. Big Limo has adopted the arguments made by Hinton and Pepaj. Doc. #20.

## II. Fed. R. Civ. P. 12(c)

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal

conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## III. Relevant Law and Insurance Policy Provisions

The parties have filed cross motions for judgment on the pleadings, seeking declaratory judgment on the question of AIX's duty to defend and indemnify Big Limo against the claims brought in the Underlying Lawsuit.

### A. Declaratory Judgment Act

The Declaratory Judgment Act provides that, in the case of an actual controversy, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree." 28 U.S.C. § 2201(a).

Given that the existence of a contractual duty is purely a question of law, this statute is often invoked by parties seeking a determination of rights and obligations under an insurance policy. Here, the parties ask the Court to determine the scope of their rights and responsibilities under the two policies that AIX issued to Big Limo.

### B. Duty to Defend and Indemnify

The parties agree that Ohio has the most significant relationship to the insurance contract, and that Ohio law therefore governs the question of whether AIX has a contractual duty to defend and indemnify Big Limo in the Underlying Lawsuit. *See Oyahon v. Safeco Ins. Co. of Ill.*, 91 Ohio St.3d 474, 477, 747 N.E.2d 206, 209 (2001).

5

To determine whether an insurer has a duty to defend, courts look to the scope of the allegations contained in the complaint filed against the insured. *Ohio Gov't Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶19. If the allegations "state a claim that potentially or arguably falls within the liability insurance coverage," then the insurer has a duty to defend. *Id.* The duty to defend exists "even if the allegations are groundless, false, or fraudulent." *City of Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13. If there is "some doubt as to whether a theory of recovery within the policy coverage had been pleaded," then the insurer must accept the defense of all claims asserted in the complaint. *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180, 459 N.E.2d 555, 558 (1984); *Sharonville*, 2006-Ohio-2180, at ¶ 13.

The duty to defend an insured against a lawsuit is broader than the duty to indemnify. Accordingly, if there is no duty to defend, it follows that there is no duty to indemnify. *Maxum Indem. Co. v. Robbins Co.*, 784 F. App'x 366, 371 (6th Cir. 2019) (citing *Granger v. Auto-Owners Ins.*, 144 Ohio St.3d 57, 40 N.E.3d 1110, 1115 (2015)). The insurer bears the burden of proving that an exclusion to coverage applies. *Continental Ins. Co. v. Louis Marx & Co., Inc.*, 64 Ohio St.2d 399, 401, 415 N.E.2d 315, 317 (1980).

C. **Relevant Policy Provisions**

The AIX policies at issue provide coverage for "personal and advertising injury." Doc. #1-2, PageID#78. "Personal and advertising injury" is defined in the

6

policies to include several offenses, three of which are potentially relevant in this case: (1) "[o]ral or written publication, in any manner, of material that slanders or libels a person . . . or disparages a person's . . . goods, products or services"; (2) "[o]ral or written publication, in any manner, of material that violates a person's right of privacy"; and (3) "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" *Id.* at PageID#87.[1]

Coverage is excluded for material first published before the beginning of the policy period. *Id.* at PageID#78. Coverage is also excluded for "[p]ersonal and advertising injury" arising out of the "*infringement of* copyright, patent, trademark, trade secret or *other intellectual property rights.*" *Id.* at PageID#79 (emphasis added). There is, however, an *exception* to this intellectual property exclusion. The exclusion does not apply to "infringement, in your 'advertisement', of copyright, trade dress or slogan." *Id.*

## IV. Jessica Hinton's Claims

As previously noted, Jessica Hinton has recently settled all claims against Big Limo in the Underlying Lawsuit. Moreover, given that Big Limo first used her image in 2016, Hinton does not dispute that the "first publication" exclusion

---

[1] An "advertisement" is defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Doc. #1-2, PageID#85. This includes notices published on the Internet. *Id.*

precludes coverage under both the 2017-18 and 2018-19 policies. Doc. #19, PageID#269.

The Court finds that, because the first publication of Hinton's image occurred prior to the beginning of either policy period, AIX has no duty to defend or indemnify Big Limo for claims brought by Hinton in the Underlying Lawsuit. Accordingly, with respect to the claims brought by Hinton, the Court SUSTAINS AIX's Motion for Judgment on the Pleadings, Doc. #17, and OVERRULES Hinton's Cross Motion for Judgment on the Pleadings, Doc. #19.

V.  Eva Pepaj's Claims

As previously noted, Big Limo's first (and only) publication of Pepaj's image occurred on April 23, 2018. Accordingly, the only relevant question remaining is whether AIX has a duty, under the 2017-2018 insurance policy, to defend and indemnify Big Limo on the claims asserted by Pepaj in the Underlying Lawsuit.[2]

---

[2] At one point in her memorandum in opposition, Pepaj states that her image appeared on the Pinups and Pints Facebook page on "August 23, 2017." Doc. #19, PageID#264. The Court agrees with AIX that this appears to be a scrivener's error. The Complaint states that the publication took place on April 23, 2018, Doc. #1-1, PageID#14, and the image at issue clearly depicts the date of the post as "April 23, 2018." *Id.* at PageID#35. Moreover, regardless of whether the posting occurred on August 23, 2017, or April 23, 2018, both dates fall within the 2017-18 policy period of April 28, 2017, to April 28, 2018.
   Pepaj argues that there is a possibility that she may discover other unauthorized uses occurring during the *2018-19* policy period. However, as AIX notes, the deadline for fact discovery was February 8, 2021. At this point, any suggestion that Big Limo misappropriated her image on other occasions is purely speculative.

AIX maintains that, because the intellectual property exclusion precludes coverage of all of Pepaj's claims, AIX has no duty to defend or indemnify Big Limo in the Underlying Lawsuit. Therein, Pepaj seeks relief under a variety of theories. Count I of the Complaint alleges a common law "invasion of privacy by appropriation." Count II alleges a violation of the Ohio Deceptive Trade Practices Act ("ODTPA"). Count III alleges a violation of the Lanham Act. Nevertheless, each claim is based on the same factual allegations that Big Limo misappropriated Pepaj's image and used it in its advertising without her permission, creating the false impression that she worked for Pinups and Pints, or otherwise endorsed or was somehow affiliated with this nightclub. She alleges that this damaged her reputation. She further alleges that Big Limo circumvented the licensing process, resulting in economic losses.

According to AIX, regardless of the labels Pepaj has placed on these three claims, they all implicate the same "right of publicity." AIX notes that, in *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003), the Sixth Circuit held that "[t]he *right of publicity is an intellectual property right* of recent origin which has been defined as the inherent right of every human being to control the commercial use of his or her identity." *Id.* at 928 (emphasis added). According to AIX, because all three claims asserted by Pepaj implicate the right of publicity, which is an intellectual property right, they all fall within the scope of the policy's exclusion for "personal and advertising injury" arising out of "the infringement of

. . . intellectual property rights." Doc. #1-2, PageID#79. Notably, Pepaj does very little to rebut this particular argument.

Instead, Pepaj argues that: (1) the *exception* to the intellectual property exclusion applies; and (2) the theories of liability asserted in the Underlying Lawsuit encompass more than infringement of intellectual property rights. She maintains that, at the very least, the allegations contained in the Complaint arguably give rise to a duty to defend. Pepaj further argues that if the policy is interpreted to exclude coverage for her claims, then it is illusory and unenforceable.

A. Exception to Intellectual Property Exclusion Does Not Apply

As previously noted, the intellectual property exclusion does not apply to "infringement, in your 'advertisement', of copyright, trade dress or slogan." Doc. #1-2, PageID#79. Pepaj argues that this exception to the intellectual property exclusion applies because Big Limo's advertisement constitutes an infringement of her "trade dress" or "slogan." The Court disagrees.

As Pepaj acknowledges, because these terms are not defined in the policy, they must be given their ordinary meaning. *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, 884 N.E.2d 1130, ¶49 (8th Dist. 2008). "Trade dress" is defined as "the overall image of a product used in its marketing or sales that is comprised of the nonfunctional elements of its design, packaging, or labeling (as colors, package shape, or symbols)." https://www.merriam-webster.com/legal/trade%20dress (last accessed June 30, 2021). As AIX points out, the concept of "trade dress" applies only to *products*,

not to people. Accordingly, it cannot be said that Big Limo infringed Pepaj's "trade dress."

A "slogan" is "a brief attention-getting phrase used in advertising or promotion." https://www.merriam-webster.com/dictionary/slogan (last accessed June 30, 2021). Pepaj's photograph may very well be attention-getting, but it is not a "phrase" that is capable of being infringed.

For these reasons, the Court concludes that the exception to the intellectual property exclusion contained in the 2017-2018 insurance policy does not apply.[3] All of the claims set forth in Counts I, II and III of the Complaint appear to fall within the intellectual property exclusion. This, however, is not the end of the inquiry.

### B. Implied Claims of Defamation Arguably Fall Within the Scope of the 2017-2018 Policy, Triggering the Duty to Defend

The Court must next consider whether the factual allegations contained in the Complaint give rise to any *other* cause of action that, although not expressly asserted in the Complaint, arguably falls within the scope of the policy, thereby triggering the duty to defend. *See Ohio Gov't Risk Mgt. Plan v. Harrison*, 2007-Ohio-4948, ¶19.

---

[3] Pepaj argues that, to the extent that the terms "trade dress" and "slogan" are deemed to be ambiguous, the Court must construe them in her favor. The Court, however, finds no ambiguity in either term. No reasonable interpretation of the Complaint filed in the Underlying Lawsuit would lead the reader to believe that Pepaj alleged that Big Limo infringed her "trade dress" or her "slogan."

11

Pepaj notes that the policy covers "personal and advertising injury" arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person . . . or disparages a person's . . . goods, products or services." Doc. #1-2, PageID#87. Although Pepaj does not expressly assert any claims of defamation or disparagement, she contends that the factual allegations in the Complaint are sufficient to support such causes of action, and trigger the duty to defend.

In support, Pepaj cites to *AIX Specialty Insurance Co. v. Dginguerian*, No. 18-24099-CIV, 2019 WL 4573255 (S.D. Fla. Sept. 20, 2019). In *Dginguerian*, as here, a model sued a nightclub that misappropriated her image to promote its business. They alleged violations of the Lanham Act, the common law right to publicity, and unauthorized misappropriation of name or likeness under Florida law. As in this case, AIX sought declaratory judgment concerning the duty to defend against these claims, and argued that the intellectual property exclusion applied.

The *Dginguerian* court held that, even if the claims that were expressly asserted in the Complaint fell within the scope of the policy's intellectual property exclusion, the factual allegations contained in the Complaint were also sufficient to state a plausible implied claim for defamation under Florida law. More specifically, the court found that the plaintiff had alleged that the nightclub: (1) made a statement (the advertisement); (2) that was false (by associating the plaintiff with the nightclub or the "striptease lifestyle"); (3) to a third party (viewers of the Facebook page); and (4) which resulted in harm to plaintiff's reputation by

"impugn[ing] her character." *Id.* at *6. Given that the policy provided coverage for publication of material that slanders or libels a person, the court held that AIX had a duty to defend against all of the claims asserted in the Complaint. *Id.* at **7-8.

Pepaj maintains that the factual allegations in her Complaint are likewise sufficient to state a claim of defamation under Ohio law.[4] To succeed on such a claim under Ohio law, the plaintiff must prove that: (1) a false statement of fact was made, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. *See Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77 (citing *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903, 908 (1996)).

In her Complaint, Pepaj alleges that: (1) Big Limo made a false statement of fact in its advertisement (by insinuating that she was affiliated with Pinups and Pints); (2) the statement was defamatory (in that it implied that she was endorsing

---

[4] Pepaj also argues that her ODTPA claim is broad enough to be construed as stating a claim of disparagement of the goods, services or business of another by false representation of fact. *See* O.R.C. § 4165.02(A)(10). However, in contrast to claim of defamation, in which the false statement disparages a person's integrity, commercial disparagement claims are limited to statements that directly target the quality of goods, services or the business of another. *White Mule Co. v. ATC Leasing Co., LLC,* 540 F. Supp.2d 869, 895 (N.D. Ohio 2008) (citing Ohio cases). The Court does not read Plaintiffs' allegations to assert a claim that Big Limo disparaged Pepaj's goods, services or business.

a disreputable business)⁵; (3) the statement was published (on the Facebook advertisement); (4) she suffered injury as a proximate result of the publication (damage to her reputation); and (5) Big Limo acted with the requisite intent in publishing the statement (by intentionally using her image to promote its business).

AIX argues that, for two reasons, the Court would err in reading a defamation claim into Pepaj's Complaint. AIX notes that, in Ohio, defamation claims are subject to a one-year statute of limitations, *Smith v. Nat'l W. Life*, 2017-Ohio-4184, 92 N.E.3d 169, ¶5 (Ohio Ct. App.), and the claim accrues upon the first publication, *T.S. v. Plain Dealer*, 194 Ohio App.3d 30, 2011-Ohio-2935, 954 N.E.2d 213, ¶ 7. AIX argues that, because the first and only publication of Pepaj's image occurred on April 23, 2017, and her Complaint was not filed until September 19, 2019, over two years later, she could not have included a defamation claim in her Complaint.

When determining whether an insurer has a duty to defend, however, the only relevant question is whether the factual allegations in the Complaint state a claim that potentially or arguably falls within the scope of insurance coverage. The question of whether there may be a viable affirmative defense, such as a statute of limitations, to such a claim does not factor into that equation.⁶

---

⁵ Pepaj argues that, because the defamatory statement involves injury to her "trade or occupation," it is defamatory *per se*. *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-Ohio-6803, 783 N.E.2d 920, ¶16.

⁶ Notably, a statute-of-limitations defense is one that can be waived. *Mills v. Whitehouse Trucking Co.*, 40 Ohio St.2d 55, 60, 320 N.E.2d 668, 671 (1974).

14

AIX also argues that the allegations in the Complaint are insufficient to state a claim of defamation because, unlike the Florida law that applied in *Dginguerian*, Ohio does not recognize a claim of defamation by implication. In *Dginguerian*, the court held that a defamatory statement may be made by implication, such as when a "photograph is juxtaposed in such a manner as to create a false impression." 2019 WL 4573255, at *5 (internal quotation omitted).

In support of its argument that Ohio law is distinguishable, AIX cites to *Kerr v. Hurd*, 694 F. Supp.2d 817 (S.D. Ohio 2010) (Merz, M.J.). In that case, Dr. Kerr accused Dr. Hurd of making several defamatory statements about him. One of those statements *implied* that Dr. Kerr was reading test results that instead should have been read by other doctors who would have been paid for doing so. However, the witness admitted on cross-examination that Dr. Hurd did not *directly* accuse Dr. Kerr of "stealing" work from other doctors. The court noted that "Ohio does not recognize slander by implication." *Id.* at 831.[7]

*Kerr*, in turn, cited to *Osborn v. Knights of Columbus*, 401 F. Supp.2d 822 (N.D. Ohio 2005). In *Osborn*, the defendant published a written statement indicating that Osborn had decided to leave the agency, enabling the agency to

---

[7] *But see Cogent Solutions Group, LLC v. Brown*, No. 2:12-cv-665, 2013 WL 6116052 (S.D. Ohio Nov. 20, 2013) (Sargus, J.), in which the court held that "Ohio law does allow for a defamation claim based on implication, or 'innuendo.'" *Id.* at *15 (citing *N.E. Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 109, 916 N.E.2d 484, 487 (Ohio Ct. App. 2009), and *Kanjuka v. Metro Health Med. Ctr.*, 151 Ohio App.3d 183, 192, 783 N.E.2d 920, 928 (Ohio Ct. App. 2002)).

hire new agents and finally bring the agency to full staffing. Defendant then wrote, "I'm sure you'll welcome the much higher level of service that this will bring your area than what was possible in past years." *Id.* at 828. This arguably implied that Osborn had provided poor customer service and that service would therefore improve after he left. The court, however, dismissed the defamation claim because "Ohio does not recognize libel through implied statements." *Id.*

*Osborn* cited to *Krems v. University Hospitals of Cleveland,* 133 Ohio App. 3d 6, 726 N.E.2d 1016 (Ohio Ct. App. 1999), involving a statement by the hospital about the plaintiffs, who were seeking public donations to help pay medical bills for their sick child. Plaintiffs alleged that this statement implied that they were trying to "sucker" the public into contributing. The court held, however, that "Ohio does not recognize libel through implied statements." *Id.* at 12, 726 N.E.2d at 1021. In so holding, the court noted that Ohio adheres to the "innocent construction" rule, which requires that statements that are capable of both a defamatory and non-defamatory meaning be given their innocent meaning. *Id.*

The case at bar, however, does not involve a "statement" that is capable of both a defamatory meaning and an innocent meaning. Rather, it involves a photograph of Pepaj, used without her permission, that is allegedly defamatory because it implies that she was either employed by or otherwise endorsed Pinups and Pints. She specifically alleges that the unauthorized use of her photograph damaged her reputation by leading people to believe that she was associated with this allegedly disreputable establishment. *See, e.g.,* Doc. #1-1, PageID#17 (¶53),

PageID##19-20 (¶70), and PageID#23 (¶91).[8] The "innocent construction rule" does not apply to this factual scenario. *See McKimm v. Ohio Elections Comm'n*, 89 Ohio St.3d 139, 146, 729 N.E.2d 364, 372 (2000) (noting that the innocent-construction rule "protects only those statements that are *reasonably* susceptible of an innocent construction," and holding that a political cartoon falsely depicting a public official engaging in illegal conduct was susceptible to just one reasonable interpretation) (emphasis in original).

In *McKimm*, the Supreme Court of Ohio held that the political cartoon "will not be exempt from legal redress merely because the charge is depicted graphically rather than verbally. See 50 American Jurisprudence 2d (1995), Libel and Slander, Section 152." *Id.* at 146, 729 N.E.2d at 372. *See also* Baldwin's Ohio Practice Tort Law § 40:204 (2d ed.) (noting that libel may include "defamation through the publication of pictures or photographs.").

Comment b to Restatement (Second) of Torts § 565, states "it is not necessary that the accusation or other statement be by words. It is enough that

---

[8] In this respect, this case is factually distinguishable from *Motorists Mutual Insurance Co. v. National Dairy Herd Improvement Association, Inc.*, 141 Ohio App.3d 269, 277, 750 N.E.2d 1169 (Ohio Ct. App. 2001), cited by AIX. That was an anti-trust case, in which it was argued that the allegations in the complaint "only make[] sense as a charge that defendants prevented plaintiff from effectively competing with them by disparaging their product and services to customers and potential customers." *Id.* The court, however, rejected the argument that the complaint arguably stated *implied* claims of defamation and disparagement that triggered the insurer's duty to defend. The court noted that the complaint contained no allegations that the defendant had published false or disparaging statements to a third party.

17

the communication is reasonably capable of being understood as charging something defamatory." By way of illustration, the Restatement points to the following. "A without the consent of B, an amateur golfer, publishes B's picture in an advertisement that represents B in the act of eating a chocolate bar manufactured by A's company. A number of persons understand from this advertisement that B has forfeited his amateur standing as a golfer by receiving compensation for the publication of his photograph. The communication is defamatory." Restatement (Second) of Torts § 565.

*McKimm* makes it clear that Ohio recognizes that a visual depiction, be that a drawing or a photograph, can be defamatory if it implies to a reasonable viewer that the person depicted in the drawing or photograph is involved in activity that impugns his or her integrity. In this case, a reasonable viewer looking at the Facebook advertisement that misappropriated Pepaj's image would understand the advertisement to mean that Pepaj was somehow affiliated with Pinups and Pints.

The Court concludes that the factual allegations in the Complaint filed in the Underlying Lawsuit are sufficient to state a plausible claim of defamation, even though such a claim is not expressly asserted. Because the insurance policy covers "personal and advertising injury" arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization," Doc. #1-2, PageID#87, the Court concludes that AIX has a duty to defend Big Limo against all of the claims asserted by Pepaj in the Underlying Lawsuit. Accordingly, with respect to the claims asserted by Pepaj, the Court OVERRULES AIX's Motion

for Judgment on the Pleadings, Doc. #17, and SUSTAINS Eva Pepaj's Cross Motion for Judgment on the Pleadings, Doc. #19. The Court expresses no opinion at this time on whether AIX will have a duty to *indemnify* Big Limo should Pepaj prevail on any of her claims at trial.[9]

## VI. Conclusion

For the reasons set forth above, the Court SUSTAINS IN PART and OVERRULES IN PART AIX Specialty Insurance Company's Motion for Judgment on the Pleadings, Doc. #17, and SUSTAINS IN PART and OVERRULES IN PART Jessica Hinton's and Eva Pepaj's Cross Motion for Judgment on the Pleadings, Doc. #19.

The Court concludes, as a matter of law, that AIX has no duty to defend or indemnify Big Limo against the claims brought by *Jessica Hinton* in the Underlying Lawsuit. AIX, however, does have a duty to defend Big Limo against the claims

---

[9] The Court need not reach Pepaj's alternative argument that application of the intellectual property exclusion to this set of facts would render that provision of the insurance contract illusory and, therefore, unenforceable. *See Michaels v. Michaels*, 197 Ohio App.3d 643, 2012-Ohio-118, 968 N.E.2d 550, ¶15. Nevertheless, the Court agrees with AIX that application of that exclusion does not render the provision illusory. The coverage for "personal and advertising injury" still encompasses a wide variety of claims involving violations of intellectual property rights. These include: publication that slanders or libels a person or disparages another's goods, products or services; publication that violates a person's right of privacy; the use of another's advertising idea in an advertisement; and infringement of another's copyright, trade dress or slogan in an advertisement. *See* Doc. #1-2, PageID#87.

brought by *Eva Pepaj* in the Underlying Lawsuit. The Court expresses no opinion at this juncture concerning AIX's duty to indemnify Big Limo should Pepaj prevail at trial on any of her claims.

Judgment shall enter accordingly.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: June 30, 2021

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE